UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ARTURO SEPULVEDA AYALA,<br><br>Plaintiff,<br><br>v.<br><br>KRISTI NOEM et al.,<br><br>Defendant. | CASE NO. 3:25-cv-5185-JNW<br><br>TEMPORARY RESTRAINING ORDER |

## 1. INTRODUCTION

The Court considers an emergency request for ex parte relief from a plaintiff—Arturo Sepulveda Ayala—facing imminent deportation despite holding deferred action status. Though such orders are disfavored, the serious questions raised regarding the Government's contradictory positions—USCIS granting Sepulveda Ayala deferred action while ICE prepares his removal—combined with the clear irreparable harm of deportation, justify temporary intervention.

Given that the Government has filed a notice indicating its intent to oppose only if the Court deems a response appropriate, and considering the imminent threat of removal, the Court grants this limited restraining order without

TEMPORARY RESTRAINING ORDER - 1

requesting such a response. This temporary relief preserves the status quo until both parties can fully present their arguments at a preliminary injunction hearing. Dkt. No. 6. This approach balances the extraordinary nature of ex parte relief against the concrete risk of irreversible harm.

## 2.  BACKGROUND

Sepulveda Ayala applied for a U visa with U.S. Citizenship and Immigration Services (USCIS) in 2022. Dkt. No. 6-1 at 1–2. U.S. Immigration and Customs Enforcement (ICE) stayed his removal from the United States while his U visa application was pending until January 23, 2025. *Id.* On January 8, 2025, Plaintiff filed a second stay application with ICE because he still had not received a decision on his U visa application. *Id.* at 2. ICE did not adjudicate his second stay application before the first stay expired and arrested Sepulveda Ayala on February 2, 2025. *Id.*

On February 19, 2025, USCIS issued a "Bona Fide Determination Notice" on Sepulveda Ayala's U visa application, granted him "deferred action," and authorized his employment in the United States. *Id.* at 4; *see also De Sousa v. Dir. of USCIS*, 720 F. Supp. 3d 794, 799 (N.D. Cal. 2024) ("If a U visa petition is deemed bona fide, USCIS grants the petitioner 'deferred action,' along with work authorization."). "'Deferred action' refers to an 'exercise in administrative discretion' under which 'no action will thereafter be taken to proceed' with the applicant's removal." *De Sousa*, 720 F. Supp. 3d at 799 (quoting *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 484 (1999)).

TEMPORARY RESTRAINING ORDER - 2

On March 5, 2025, Plaintiff filed a complaint for mandamus relief to compel the adjudication of whether he should be placed on the U visa waitlist, adjudication of the U visa itself, and adjudication of his application for advance permission to enter as a nonimmigrant. Dkt. No. 6-1 at 9. The complaint also alleges violations of Sepulveda Ayala's due process rights and the Administrative Procedure Act.

One day later, on March 6, 2025, ICE denied Sepulveda Ayala's second stay application as "unnecessary and in fact, redundant," because USCIS had already granted Sepulveda Ayala deferred action. *Id.* at 2, 6–7. ICE continues to detain Sepulveda Ayala at the Northwest ICE Processing Center in Tacoma, Washington, and now intends to deport him soon. Dkt. No. 6-1 at 3 (explaining Ayala will soon be "manifested for removal").

Sepulveda Ayala filed this emergency motion for a temporary restraining order precluding his deportation. The Government filed a notice of intent to oppose the motion, but only "if this Court deems a response is appropriate." Dkt. No. 8.

### 3.  DISCUSSION

**3.1  Legal standard.**

The standard for issuing a TRO is the same as the standard for issuing a preliminary injunction. *See New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1347 n.2 (1977). A TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "The proper legal standard for preliminary injunctive relief requires a party to demonstrate (1) 'that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence

of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing *Winter*, 555 U.S. at 20). These four factors—the *Winter* factors—apply whenever a preliminary injunction is sought. *Winter*, 555 U.S. at 20; *see All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) ("a showing on all four prongs" is required).

The Ninth Circuit takes a "sliding scale" approach to preliminary relief, under which "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiffs can support issuance of a preliminary injunction, so long as the plaintiffs also show that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021) (cleaned up). This approach allows a stronger showing of one *Winter* factor to offset a weaker showing of another. *Planned Parenthood Great Nw., Hawaii, Alaska, Indiana, Kentucky v. Labrador*, 122 F.4th 825, 843–44 (9th Cir. 2024).

After considering the record and the applicable legal standard, the Court concludes that an emergency TRO is warranted for the reasons stated below.

**3.2   Sepulveda Ayala raises serious questions going to the merits.**

Sepulveda Ayala raises serious questions going to the merits of his APA claim for unreasonable delay in the adjudication of his U-visa-related applications. The Court addresses only the merits of Sepulveda Ayala's APA claim in this Order. *See Versaterm Inc. v. City of Seattle*, C16-1217-JLR, 2016 WL 4793239, at *5 (W.D.

Wash. Sept. 13, 2016) ("Where a party asserts multiple claims, the court need not find that the plaintiff is likely to succeed on the merits of all of the plaintiff's claims to issue a preliminary injunction.").

Section 706(1) of the APA requires the reviewing court to "compel agency action unlawfully withheld or unreasonably delayed." *CRVQ v. USCIS*, No.: CV 19-8566, 2020 WL 8994098 (C.D. Cal. Sept. 24, 2020) (quoting 5 U.S.C. § 706(1)) (citing 5 U.S.C. § 555(b) ("With due regard for the convenience and necessity of the parties . . . and within a reasonable time, each agency shall proceed to conclude a matter presented to it.")). To decide whether an agency's delay is unreasonable, district courts in the Ninth Circuit use the six-factor "*TRAC* test." The factors are:

(1) the time agencies take to make decisions must be governed by a rule of reason;

(2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

(3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

(4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

(5) the court should also take into account the nature and extent of the interests prejudiced by delay; and

(6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*In re Pesticide Action Network N. Am., Nat. Res. Def. Council, Inc.*, 798 F.3d 809, 813 (9th Cir. 2015) (citing *Telecommunications Rsch. & Action Ctr. v. F.C.C.*, 750 F.2d 70, 79 (D.C. Cir. 1984) ("TRAC")).

Considering these factors here, Sepulveda Ayala raises serious questions about the reasonableness of the Government's delay. The third and fifth factors are particularly informative, as Sepulveda Ayala faces extreme prejudice through deportation, and his health and welfare are at stake. Likewise, the fourth factor supports a finding of unreasonable delay, given Sepulveda Ayala's uniquely distinct position as compared to other U visa applicants. *See A.C.C.S. v. Nielsen*, Case No. CV 18-10759, 2019 WL 7841860, at *6 (C.D. Cal. Sept. 17, 2019) (considering whether plaintiffs could differentiate themselves from other U visa applicants such that the fourth *TRAC* factor weighed in their favor). He is distinct from other U visa applicants because he is detained and facing immediate deportation even though he has U.S. work authorization and a Bona Fide Determination Notice in hand. And the delay has persisted for over two years.

Thus, Sepulveda Ayala presents serious questions about whether the Government's delay is unreasonable under the APA. Given the balance of hardships tips sharply in Sepulveda Ayala's favor, as explained below, this showing is sufficient under the Ninth Circuit's sliding scale approach to warrant temporary relief while the Court more fully considers the merits.

**3.3 The remaining *Winter* factors support a TRO.**

The second *Winter* factor—irreparable harm—tips sharply in favor of a TRO. Sepulveda Ayala is in his 50s and has lived in the United States for most of his life. He will face deportation and family separation absent a TRO. He will face significant additional hurdles in the U visa process if removed. *See* Dkt. No. 6 (motion) at 5–6 (citing 8 U.S.C. §1182(a)(9)(A)) (explaining that removal will trigger "inadmissibility," and will require Sepulveda Ayala to obtain a discretionary waiver of inadmissibility). These harms are severe, concrete, and cannot be remedied through monetary compensation.

The final two *Winter* factors, which involve balancing the equities and considering the public interest, merge when the Government is a party to a case. *Padilla v. Immigr. & Customs Enf't*, 953 F.3d 1134, 1141 (9th Cir. 2020). These factors also tip sharply in Sepulveda Ayala's favor. A TRO would impose little to no prejudice on the Government, which has already issued a Bona Fide Determination on Sepulveda Ayala's U visa petition and authorized him to work lawfully in the United States. ICE acknowledged as recently as March 6, 2025, that removal would be inappropriate given his deferred action status. Thus, a TRO precluding Sepulveda Ayala's deportation would change little to nothing for the agencies involved. Meanwhile, absent a TRO, Sepulveda Ayala will face life-changing and irreparable harm.

TEMPORARY RESTRAINING ORDER - 7

### 3.4  An ex parte TRO is appropriate and necessary.

Courts will rarely grant TROs ex parte. Fed. R. Civ. P. 65(b); LCR 65(b). But "if the movant meets the requirements of Fed. R. Civ. P. 65(b), the court may grant the motion without awaiting a response." LCR 65(b). Sepulveda Ayala has met those requirements by demonstrating through specific facts in the supporting declaration of counsel that immediate and irreparable injury would result before full briefing could occur. The Government has filed a notice indicating its intent to oppose only if the Court deems a response appropriate. But given the imminent threat of deportation and the serious questions raised, the Court finds ex parte relief warranted without requesting an opposition at this time. A more thorough examination of the issues will occur at the preliminary injunction stage.

## 4.  CONCLUSION

Accordingly, the Court ORDERS that Defendants and all their officers, agents, servants, employees, attorneys, and persons acting on their behalf in concert or in participation with them are immediately enjoined from:

(a) Removing or deporting Sepulveda Ayala from the United States; and

(b) Transferring Sepulveda Ayala from the Northwest ICE Processing Center to any other facility during the pendency of these proceedings.

Unless extended by the Court, this Temporary Restraining Order expires 14 days from entry. No security bond is required under Federal Rule of Civil Procedure 65(c) because Defendants face no realistic likelihood of harm from enjoining their conduct. *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003).

To the extent Sepulveda Ayala intends to move for a preliminary injunction, the parties are ordered to meet and confer and file a joint status report by April 30, 2025, (1) proposing a preliminary injunction briefing schedule, (2) indicating whether they believe a hearing is necessary, and if so, (3) indicating whether they plan to present evidence at the hearing.

Dated this 26th day of April, 2025.

Jamal N. Whitehead
United States District Judge

TEMPORARY RESTRAINING ORDER - 9