UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ARTURO SEPULVEDA AYALA,<br><br>Plaintiff,<br><br>v.<br><br>KRISTI NOEM, et al.,<br><br>Defendants. | CASE NO. 3:25-cv-5185-JNW<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION |

## 1. INTRODUCTION

This matter comes before the Court on Plaintiff Arturo Sepulveda Ayala's motion for preliminary injunction. Dkt. No. 11. On April 26, 2025, the Court issued an ex parte temporary restraining order (TRO) prohibiting Defendants and their agents from removing Sepulveda Ayala from the country or transferring him to another detention center to preserve the status quo until both parties can fully present their arguments about the wisdom of entering a preliminary injunction. Dkt. No. 9.

Now, having considered the record, the Parties' briefing, and the applicable law, and being otherwise fully informed, the Court DENIES Sepulveda Ayala's

ORDER - 1

preliminary injunction motion for the reasons below. In sum, the Court cannot conclude that Sepulveda Ayala has shown a likelihood of success on the merits of his underlying claims.

## 2. BACKGROUND

**2.1  The U-visa adjudication process.**

Because Sepulveda Ayala's claims are based on his U-visa application, the Court finds it helpful to outline the U-visa approval process. U visas provide temporary legal status to victims of certain serious crimes who have suffered substantial physical or mental abuse and who cooperate with law enforcement in investigating or prosecuting those crimes. *See* 8 U.S.C. § 1101(a)(15)(U); 8 C.F.R. § 214.14. Congress created U visas to encourage crime victims to report crimes and assist law enforcement without fear of removal. *Id.* U-visa applicants must show that they are admissible into the United States, 8 C.F.R. § 214.1(a)(3)(i), and if they are inadmissible, they generally must file a Form I-192, which requests a waiver of certain grounds for inadmissibility. 8 C.F.R. § 214.14(c)(2)(iv). Congress capped the number of U visas at 10,000 per year. 8 C.F.R. § 214.14(d).

For each U-visa petition (Form I-918), USCIS must "issue a written decision approving or denying [it]." 8 C.F.R. § 214.14(c)(3), (4). If the petitioner is eligible for U-1 nonimmigrant status, then USCIS "will approve" the petition. 8 C.F.R. § 214.14(c)(5)(i). And if the petitioner is already in the United States, "USCIS will also concurrently grant U-1 nonimmigrant status," by conferring a U-visa to the petitioner "subject to the . . . limitation" on the number of U-visas available. *Id.*; 8 C.F.R. § 214.14(d)

ORDER - 2

Because applications far exceed the 10,000 annual limit, eligible applicants typically wait several years before receiving actual U visas, creating a substantial backlog. 8 C.F.R. § 214.14(d)(2). To address these lengthy delays, USCIS created a waiting list process for those awaiting visa availability. *Id.* ("All eligible petitioners who, due solely to the cap, are not granted U-1 nonimmigrant status must be placed on a waiting list[.]"). Waitlisted petitioners receive either deferred action or parole, and they qualify for other interim benefits, like work authorization in the form of "Employment Authorization Documents" ("EADs"). *Id.*

Recently, through agency policymaking, USCIS developed the "Bona Fide Determination" ("BFD") process to speed up its U-visa processing. *Barrios Garcia v. U.S. Dep't of Homeland Sec.*, 25 F.4th 430, 438 (6th Cir. 2022) (citing USCIS Policy Alert at 2 (June 14, 2021), https://www.uscis.gov/sites/default/files/document/policy-manual-updates/20210614-VictimsOfCrimes.pdf) ("Policy Alert"). During this process, USCIS conducts "bona fide determinations (BFD) and provides EADs and deferred action to noncitizens with pending, bona fide petitions who meet certain standards." Policy Alert at 2; *see also* USCIS, Policy Manual, Vol. 3, Part C, Ch. 5, https://www.uscis.gov/policy-manual/volume-3-part-c-chapter-5 (last visited June 4, 2025). Because USCIS adopted this policy for its expediency, it will not conduct a waiting list adjudication for a BFD recipient unless ordered to do so. *See* USCIS, Policy Manual, Vol. 3, Part C, Ch. 5, Ch. 6; *cf.* Dkt. No. 16 at 6–7 (Government's Opposition) ("Alternatively, if for some reason a petitioner does not receive a BFD, only then does USCIS initiate a waiting list adjudication[.]").

ORDER - 3

**2.2    Mr. Sepulveda Ayala.**

In 2004, Sepulveda Ayala was ordered removed from the country for entering without inspection. He claims that the last time he entered the United States was in 2004. Dkt. No. 1 at 6. On November 15, 2022, Sepulveda Ayala applied for a U-visa, concurrently submitting a Form I-192, Application for Advance Permission to Enter as a Nonimmigrant, and form I-765, Application for Employment Authorization. *Id.* at 7; *see also* Dkt. Nos. 1-1; 6-1 at 1–2. He also applied for stay of removal with U.S. Immigration and Customs Enforcement (ICE); ICE granted it and stayed his removal from the United States until January 23, 2025. Dkt. Nos. 1-1; 6-1 at 1–2.

On January 8, 2025, Sepulveda Ayala still had not received a decision on his U-visa application, and so he filed a second stay application with ICE to prevent his removal while his U visa and Form I-192 were pending. Dkt. Nos. 1-1; 6-1 at 1–2. ICE did not adjudicate his second stay application before the first stay expired. *See* Dkt. Nos. 1-1; 6-1 at 1–2. On February 2, 2025, ICE reinstated Sepulveda Ayala's 2004 order of removal and used it to arrest and detain him. *See* Dkt. Nos. 6-1 at 1–2; 17-1. ICE continues to detain Sepulveda Ayala at the Northwest ICE Processing Center in Tacoma, Washington.

On February 19, 2025, USCIS issued Sepulveda Ayala a BFD with deferred action, and a few days later, it granted his EAD application. Dkt. No. 1-1; Dkt. No. 6-1 at 4–5. It is undisputed that the Government has granted Sepulveda Ayala "BFD EAD" benefits and deferred action. *See generally* Dkt. No. 16 (Government's Opposition).

ORDER - 4

On March 5, 2025, Sepulveda Ayala filed a complaint for mandamus relief to compel the adjudication of whether he should be placed on the U-visa waitlist, adjudication of the U visa itself, and adjudication of his application for advance permission to enter as a nonimmigrant. Dkt. No. 1. The complaint also alleges violations of Sepulveda Ayala's Fifth Amendment due process rights and the Administrative Procedure Act. *Id*.

One day later, on March 6, 2025, ICE denied Sepulveda Ayala's second stay application as "unnecessary and in fact, redundant," because USCIS had already granted Sepulveda Ayala deferred action. Dkt. No. 6-1 at 2, 6–7.

On April 25, 2025, Sepulveda Ayala filed an emergency ex parte motion for a TRO, explaining that ICE intended to deport him within two weeks. Dkt. No. 6; Dkt. No. 6-1 at 3 (explaining Ayala will soon be "manifested for removal"). On April 26, the Court granted the motion and enjoined his removal temporarily. Dkt. Nos. 9; 13. A few days later, on April 30, 2025, Plaintiff's attorney received a second ICE order, explaining that ICE had sua sponte reconsidered Sepulveda Ayala's application for a stay of removal. Dkt. No. 11-1. ICE's reconsideration order, which was conducted by a different field office, denied Sepulveda Ayala's application for a stay, stating:

> The ICE Office of Enforcement and Removal Operations in Seattle received your ICE Form I-246, *Application for Stay of Deportation or Removal*. On March 6, 2025, ERO Seattle denied this ICE form I-246 on the basis that you were not subject to imminent removal from the United States. Upon further legal review, this has been determined not to be accurate and a second review and consideration of your ICE Form I246 was completed.

ORDER - 5

*Id.* at 2. On May 2, 2025, Sepulveda Ayala filed this motion for a preliminary restraining order. The Court extended the TRO twice to maintain the status quo while receiving and considering briefing on the requested preliminary injunction.

## 3.  DISCUSSION

### 3.1  The Court has subject-matter jurisdiction.

"Federal courts are always under an independent obligation to examine their own jurisdiction, and a federal court may not entertain an action over which it has no jurisdiction." *Hernandez v. Campbell*, 204 F.3d 861, 865 (9th Cir. 2000) (citation modified). The Government challenges the Court's jurisdiction here, arguing 8 U.S.C. § 1252(g) deprives the Court of jurisdiction. Section 1252(g) bars jurisdiction over claims "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders." But the Supreme Court has interpreted this provision narrowly, limiting it to "only three discrete actions": the "'decision or action' to *commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (quoting 8 U.S.C. § 1252(g)).

As the Supreme Court found, "[i]t is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings." *Id.* (Scalia, J.); *see also Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020) ("*Regents*") (holding court had jurisdiction to review agency decision to rescind DACA, consistent with Section 1252(g), because it was not a decision to "commence

ORDER - 6

proceedings," or to "'adjudicate' a case or 'execute' a removal order" and was rather a decision to "revoke[] a deferred action program with associated benefits." (quoting 8 U.S.C. § 1252(g))); *Jatta v. Clark*, Case No. 19-cv-2086, 2020 WL 7700226, at *7 (W.D. Wash. July 17, 2020) (Report and Recommendation) (Section 2255(g) "d[oes] not strip the district court[s] of jurisdiction to enter injunctive relief," when "the 'gravamen' of the defendant's claim d[oes] not arise from the decision or action to commence [removal] proceedings." (quoting *United States v. Hovsepian*, 359 F.3d 1144, 1155 (9th Cir. 2004) (en banc))).

In service of its jurisdiction-striping argument, the Government mischaracterizes the relief Sepulveda Ayala seeks. He does not challenge his removal order or seek review of the Government's decision to execute it. Instead, he brings an APA claim challenging the Government's unreasonable delay in adjudicating his U-visa petition and placing him on the regulatory waitlist. The requested preliminary injunction serves only to preserve the status quo while this separate APA claim proceeds—it does not seek review of removal proceedings themselves.

This distinction is critical and well-recognized. As the court found in *Uranga v. USCIS*, 490 F. Supp. 3d 86, 96–97 (D.D.C. 2020), APA delay claims fall outside Section 1252(g) because in those cases the plaintiff "is not challenging the commencement, adjudication, or execution of his removal order" but rather "the government's delay in adjudicating . . . U-visa waitlist eligibility." The Ninth Circuit has similarly recognized that challenges to agency actions separate from removal proceedings remain within district court jurisdiction. *Arce v. United States*, 899 F.3d

ORDER - 7

796, 799-800 (9th Cir. 2018) (claims arising from violation of court's stay order, rather than removal execution itself, fall outside § 1252(g)).

The Government's reliance on *Rauda v. Jennings*, 55 F.4th 773 (9th Cir. 2022), and *Balogun v. Sessions*, 330 F. Supp. 3d 1211 (C.D. Cal. 2018), is misplaced. Both cases involved direct challenges to removal through motions to reopen removal proceedings or requests to stay removal based on pending immigration proceedings, not APA claims for unreasonable agency delay in benefit adjudications. Here, by contrast, Sepulveda Ayala challenges the Government's failure to comply with its statutory duties regarding his visa application—a claim that remains viable regardless of his removal status.

Thus, the Court finds that Section 1252(g) does not bar its exercise of jurisdiction here.

### 3.2  Sepulveda Ayala has standing.

The Government contends that Sepulveda Ayala lacks Article III standing because he has already received through the BFD process the same relief he seeks through mandamus—namely, deferred action and work authorization. Dkt. No. 16 at 12–13. This argument mischaracterizes both Sepulveda Ayala's requested relief and the nature of his injury.

Sepulveda Ayala seeks more than just deferred action and work authorization. He requests adjudication of his Form I-918 U-visa petition, adjudication of his Form I-192 waiver application, and placement on the regulatory

ORDER - 8

waitlist established by 8 C.F.R. § 214.14(d)(2). Dkt. No. 1. The Government has not provided any of these adjudications. This is injury in fact.

The Government's redressability argument also fails. While both may provide similar interim benefits like work authorization, the regulations suggest that waitlist placement may provide stronger protection against removal. *See* 8 C.F.R. § 214.14(c) (addressing removal proceedings for individuals with pending U-visa petitions). The requested relief—formal adjudications and waitlist placement—would provide him with regulatory protections and potentially stronger grounds for challenging his removal.

Courts have found standing when plaintiffs challenge agency delays in immigration benefit adjudications, even where interim relief has been provided. *C.f. Barrios Garcia*, 25 F.4th at 455 (reversing dismissal U-visa applicant's APA challenge seeking waitlist adjudication despite receiving BFD benefits; remanding for further proceedings).

Accordingly, the Court rejects the Government's standing argument.

### 3.3   Preliminary injunction standard.

"A preliminary injunction is an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "The proper legal standard for preliminary injunctive relief requires a party to demonstrate (1) 'that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an

ORDER - 9

injunction is in the public interest.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing *Winter*, 555 U.S. at 20). These four factors—the *Winter* factors—apply whenever a preliminary injunction is sought. *Winter*, 555 U.S. at 20; *see All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) ("a showing on all four prongs" is required).

The Ninth Circuit takes a "sliding scale" approach to preliminary relief, under which "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiffs can support issuance of a preliminary injunction, so long as the plaintiffs also show that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021) (cleaned up). This approach allows a stronger showing of one *Winter* factor to offset a weaker showing of another. *Planned Parenthood Great Nw., Hawaii, Alaska, Indiana, Kentucky v. Labrador*, 122 F.4th 825, 843–44 (9th Cir. 2024).

### 3.4 Sepulveda Ayala has not shown a likelihood of success on the merits, making a preliminary injunction inappropriate.

Sepulveda Ayala alleges APA and mandamus claims. Under the APA, a reviewing court may "compel agency action unlawfully withheld or unreasonably delayed[.]" 5 U.S.C. § 706(1). "[A] claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64, (2004) (emphasis removed). "The central question in evaluating 'a claim of unreasonable delay' is 'whether the agency's delay is so egregious as to warrant mandamus.'" *In re*

ORDER - 10

*Core Commc'ns, Inc.*, 531 F.3d 849, 855, 382 U.S. App. D.C. 120 (D.C. Cir. 2008) (quoting *Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 79, 242 U.S. App. D.C. 222 (D.C. Cir. 1984) ("*TRAC*")). Because "mandamus relief and relief under the APA are 'in essence' the same, when a complaint seeks relief under the Mandamus Act and the APA and there is an adequate remedy under the APA, [the court] may elect to analyze the APA claim only." *Vaz v. Neal*, 33 F.4th 1131, 1135 (9th Cir. 2022) (quoting *R.T. Vanderbilt Co. v. Babbitt*, 113 F.3d 1061, 1065 (9th Cir. 1997)).

To decide whether an agency's delay is unreasonable under the APA, district courts in the Ninth Circuit apply the "*TRAC*" factors. *In re Pesticide Action Network N. Am., Nat. Res. Def. Council, Inc.*, 798 F.3d 809, 813 (9th Cir. 2015) ("*Pesticide Action Network*") (citing *TRAC*, 750 F.2d at 79). These factors are:

> (1) the time agencies take to make decisions must be governed by a rule of reason;
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
>
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
>
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Id.* (quoting *TRAC*, 750 F.2d at 79).

ORDER - 11

Applying the *TRAC* factors to Sepulveda Ayala's claims reveals that he has not shown a likelihood of success on the merits.

### 3.4.1   The first *TRAC* factor weighs in favor of the Government.

The first *TRAC* factor favors the Government—it "considers the length of the delay and 'whether the agency's response time . . . is governed by an identifiable rationale.'" *Mahmood v. Bitter et al.*, 2025 WL 1529389, at *7 (W.D. Wash. May 29, 2025) (quoting *Khan v. Blinken*, No. C23-2814, 2024 WL 3446432, at *7 (E.D. Cal. July 17, 2024) (citation omitted)). While not dispositive, the Ninth Circuit has held that this factor is the most important. *Vaz v. Neal*, 33 F.4th 1131, 1138 (9th Cir. 2022) (citing *In re A Cmty. Voice*, 878 F.3d 779, 786 (9th Cir. 2017) (holding first *TRAC* factor to be most important, but explaining "[w]e have to consider them all"); *Barker v. USCIS*, Case No. 8:23-cv-00597, 2023 WL 7107257, at *3 (C.D. Cal. Sept. 11, 2023).

USCIS process U-visa applications using a "first in, first out" approach, handling petitions in the order they were received. Sepulveda Ayala does not dispute that USCIS follows its general policy of processing U-visa applications in this way. Courts consistently find that this "first in, first out" policy for processing U-visa petitions provides an adequate rule of reason. *See, e.g., Uranga*, 490 F. Supp. 3d at103 ; *cf. L'Assoc. des Americains Accidentels v. U.S. Dep't of State*, 633 F. Supp. 3d 74, 82 (D.D.C. Sept. 28, 2022) ("Usually, that kind of 'first in, first out' method supplies an adequate rule of reason."). Likewise, district courts have found that the Government's "procedure for issuing [U-visa] waitlist determinations is governed by

ORDER - 12

a rule of reason." *A.C.C.S. v. Nielsen*, No. CV 18-10759-2019 WL 7841860, at *4 (C.D. Cal. Sept. 17, 2019).

Sepulveda Ayala's two-and-a-half-year delay falls within the range courts regularly find reasonable for visa processing, as courts regularly conclude that equal or longer delays are reasonable. *See e.g.*, *Khosravi v. Rubio*, No. 2:24-cv-1227, 2025 WL 821885, at *6 (W.D. Wash. March 14, 2025) (collecting cases); *Barazandeh v. U.S. Dep't of State*, 2024 WL 341166, at *8 (D.D.C. Jan. 30, 2024) (collecting cases) (noting "district courts have generally found that immigration delays of two to three years are reasonable"); *Islam v. Heinauer*, 32 F. Supp. 3d 1063, 1071 (N.D. Cal. March 7, 2014) (collecting cases) (explaining that courts in the Ninth Circuit tend to find "delays of four years or less not to be unreasonable"); *but see Barrios Garcia*, 25 F.4th at 454 ("We find it unhelpful to fixate on the average snail's pace when comparing snails against snails in a snail's race.").

Sepulveda Ayala argues that 8 U.S.C. § 1571, which suggests a 180-day timeframe for processing visa applications, provides the applicable "rule of reason." 8 U.S.C. § 1571(b). But the Court finds that 8 U.S.C. § 1571 is better addressed under the second *TRAC* factor.

Given that Sepulveda Ayala offers no other challenge to USCIS's processing rationale, the first *TRAC* factor favors the Government.

### 3.4.2    The second *TRAC* factor tips slightly in Sepulveda Ayala's favor.

The second *TRAC* factor considers whether "Congress has provided a timetable or other indication of the speed with which it expects the agency to

ORDER - 13

proceed in the enabling statute." *TRAC*, 750 F.2d at 79. Sepulveda Ayala relies on 8 U.S.C. § 1571(b), which states, "[i]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application." He argues that the purpose of the statute is to "eliminat[e] the backlog and processing delays in immigration benefits adjudications." Dkt. No. 1 at 11 (quoting 8 U.S.C. § 1571(b)).

Courts addressing 8 U.S.C. § 1571(b) have uniformly held that its timeframe is non-binding. *See e.g.*, *Uranga*, 490 F. Supp. 3d at 103; *Barker*, 2023 WL 7107257, at *4; *Jain v. Renaud*, No. 21-cv-031152021 WL 2458356, at *5 (N.D. Cal. June 16, 2021) (citing *Yang v. Cal. Dept. of Soc. Servs.*, 183 F.3d 953, 958 (9th Cir. 1999), for the proposition that the "sense of Congress" language in 8 U.S.C. § 1571(b) is non-binding, "precatory" language). Even so, many courts find this timeframe relevant to the second *TRAC* factor as evidence of congressional intent. *Barrios Garcia*, 25 F.4th at 454 ("[E]ven though an 'unreasonably delayed' analysis does not rise and fall on a statutory deadline, we are mindful that Congress *has* expressed that immigration-benefit applications should be adjudicated within six months."); *Uranga*, 490 F. Supp. 3d at 103 (quoting *TRAC*, 750 F.2d at 80) (holding the provision is "certainly an indication of what the legislature had in mind—after all, Congress had the option of saying nothing on the subject at all"); *Maadarani*, 2024 WL 4674703, at *11 ("Although the Ninth Circuit has held that similar 'sense of Congress' language is 'non-binding, legislative dicta' which creates no

ORDER - 14

obligations, . . . it does provide valuable insight as to what Congress thought would be reasonable in adjudicating immigration cases.").

Sepulveda Ayala filed his petition over 900 days ago. This substantially exceeds Congress's 180-day timeframe, even if it is non-binding. Thus, the Court finds that the second *TRAC* factor weighs slightly in favor of Sepulveda Ayala.

### 3.4.3   The third and fifth *TRAC* factors favor Sepulveda Ayala.

Courts regularly consider the third and fifth *TRAC* factors together because these factors "require the court to assess whether human health and welfare are at stake and whether the nature and extent of those interests are prejudiced by the delay." *Khosravi v. Rubio*, No. 2:24-cv-1227, 2025 WL 821885, at *7 (W.D. Wash. March 14, 2025) (internal quotation marks and citations omitted).

As the Court previously found when granting the TRO, Spulveda Ayala "faces extreme prejudice through deportation, and his health and welfare are at stake." Dkt. No. 9 at 6. He faces immediate removal and family separation based on a 20-year-old removal order, even though he has valid U.S. work authorization, deferred action, and a Bona Fide Determination Notice in hand. The delay in deciding his U-visa petition directly impacts his physical liberty and family unit, core human health and welfare concerns that are threatened by the administrative delays here. These factors tip sharply in Spulveda Ayala's favor.

### 3.4.4   The fourth *TRAC* factor likely favors the Government.

The fourth *TRAC* factor directs courts to "consider the effect of expediting delayed action [in the plaintiff's case] on agency activities of a higher or competing

ORDER - 15

priority." *Pesticide Action Network*, 798 F.3d at 813 (quoting *TRAC*, 750 F.2d at 79). This factor recognizes that agencies must "juggle competing duties" using the resources available to them. *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1101 (D.C. Cir. 2003) ("*Mashpee*")); *see Vaz*, 33 F.4th at 1138 ("Requiring the [agency] to investigate [the plaintiff's] complaint would interfere with the [agency's] discretion in prioritizing its activities and allocating its resources."); *L'Assoc. des Americains Accidentels*, 633 F.Supp.3d at 84 (recognizing the importance of competing agency priorities in a *TRAC* analysis); *Khosravi*, 2025 WL 821885, at *7 (finding that "an order requiring Defendant to adjudicate [the plaintiff's] application would . . . prioritize him at the expense of similarly situated applicants"). As such, courts should avoid orders that simply allow one petitioner to "cut the line," pushing back all similarly situated petitioners. *Vaz*, 33 F.4th at 1138; *Mashpee*, 336 F.3d at 1101; *L'Assoc. des Americains Accidentels*, 633 F.Supp.3d at 84; *Khosravi*, 2025 WL 821885, at *7. In those cases, the fourth *TRAC* factor usually favors the Government.

But if a petitioner is able to prove that their situation is distinct from other individuals waiting in the queue such that they should receive priority, then the fourth *TRAC* factor weighs in their favor. *See, e.g., Nadhar v. Renaud*, No. CV-21-00275, 2021 WL 2401398, at *3 (D. Ariz. June 11, 2021) ("Nor have Plaintiffs shown that there is something special about their petitions that justifies leapfrogging over other similarly situated petitioners who have not sued."); *A.A.C.S.*, 2019 WL 7841860, at *6 ("Ultimately, Plaintiffs have not shown that they received different

or worse treatment from that experienced by other petitioners awaiting decisions in the U visa backlog.").

Sepulveda Ayala argues that he is different from other U-visa petitioners because he has been detained and faces removal from the United States despite his deferred action status and BFD EAD benefits. Dkt. No. 11 at 5. But the Government contends that all other individuals in Sepulveda Ayala's position are subject to removal at this time, as well as all those on the U-visa waitlist. On this record, Sepulveda Ayala has not shown that he "received different or worse treatment from that experienced by other petitioners awaiting decisions in the U visa backlog." *A.A.C.S.*, 2019 WL 7841860, at *6. Because expediting Sepulveda Ayala's petition would require USCIS to prioritize his petition before other, earlier-filed U-visa petitions, and because Sepulveda Ayala has not shown that the Government has treated him differently from similarly situated petitioners, the Court finds that the fourth *TRAC* factor favors the Government.

**3.4.5    The sixth *TRAC* factor is neutral.**

Finally, the sixth *TRAC* factor considers allegations of agency impropriety. Sepulveda Ayala has not argued agency impropriety. "Under similar circumstances, courts in the Ninth Circuit have found this factor to either weigh in the government's favor or to be neutral." *Kapoor v. Blinken*, No. 21-cv-01961, 2022 WL 181217, at *9 (N.D. Cal. Jan. 20, 2022) (citation and quotation omitted).

After analyzing and balancing the *TRAC* factors, the Court finds that Sepulveda Ayala has not demonstrated a likelihood of success on the merits.

ORDER - 17

**3.5  Having found that Sepulveda Ayala has not demonstrated a likelihood of success on the merits, the Court need no address the remaining *Winter* factors.**

Because likelihood of success is a threshold requirement for preliminary injunctive relief under both the traditional *Winter* test and the sliding scale approach, a plaintiff's failure to satisfy this element generally eliminates the need to analyze the remaining *Winter* factors. *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) ("A court need not consider the other factors if a movant fails to show a likelihood of success on the merits." (citation modified)).

Because Sepulveda has not shown a likelihood of success on his underlying APA and mandamus claims, his motion for a preliminary injunction fails regardless of the balance of harms, equities, or public interest considerations. *Id.*

## 4.  CONCLUSION

Accordingly, the Court DENIES Sepulveda Ayala's motion for preliminary injunction. Dkt. No. 11.

Dated this 5th day of June, 2025.

Jamal N. Whitehead
United States District Judge

ORDER - 18